NOTICE

Decision filed 07/15/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250373-U

NO. 5-25-0373

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| *In re* ESTATE OF CLIFTON BUTTRAM, Deceased | ) ) ) | Appeal from the Circuit Court of Christian County. |
| (Shelly Warren, Executor of the Estate of Clifton Buttram, Deceased, | ) ) ) | |
| Petitioner-Appellant, | ) ) ) | |
| v. | ) ) | No. 23-PR-68 |
| Aron Buttram, | ) ) ) | Honorable Christopher B. Hantla, |
| Respondent-Appellee). | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Presiding Justice Cates and Justice Moore concurred in the judgment.[*]

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court where the circuit court did not err in removing the executor of an estate and setting aside for fraud the executor's purchase of property from the estate. Additionally, we deny the respondent's request for sanctions.

¶ 2    Shelly Warren (Warren), the former executor of the Estate of Clifton Buttram, appeals the March 24, 2025, order of the Christian County circuit court granting Aron Buttram's (Aron) motion to remove Warren as executor and to set aside for fraud the purchase of estate property

_____

[*]Justice Moore fully participated in the decision prior to his retirement. See *Cirro Wrecking Co. v. Roppolo*, 153 Ill. 2d 6 (1992).

1

made by Warren and her husband. Additionally, Aron has requested this court to impose sanctions on Warren under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). For the following reasons, we affirm the judgment of the circuit court and deny Aron's motion for sanctions.

¶ 3                                I. BACKGROUND

¶ 4     Warren and Aron are the children of Clifton Buttram, who died in Edinburg, Illinois, on October 27, 2023, leaving a will dated October 19, 2023. In his will, save for a few items of personal property, Buttram devised the entirety of his estate to Warren and Aron in equal shares. Among the assets of Buttram's estate were two properties which are relevant to this appeal. The first is a property located in Blue Mound, Illinois; and the second is a property located in Edinburg, Illinois.

¶ 5     In his will, Buttram also appointed Warren as executor and directed independent administration. Among other powers, Buttram gave the executor the following powers to be exercisable without court order: (1) to sell at public or private sale, retain, lease, borrow money and for that purpose to mortgage or pledge, all or part of the real or personal property of his estate; (2) to distribute the residue of his estate in cash or in kind or partly in each, and to conclusively determine the value of any property distributed in kind; and (3) to execute and deliver any deeds, contracts, mortgages, bills of sale, or other instruments necessary or desirable for the execution of the executor's powers.

¶ 6     On November 13, 2023, Warren filed a petition for Buttram's will to be admitted to probate, for Warren's appointment as executor, and for independent administration of Buttram's estate. On November 15, 2023, the circuit court entered an order admitting Buttram's will to probate and appointing Warren as independent executor of Buttram's estate.

2

¶ 7 On June 25, 2024, Warren executed an executor's deed conveying a 1/2 interest in the Blue Mound property to herself and her husband in exchange for $32,500. To pay for their purchase, Warren and her husband secured a $26,000 mortgage on the property. On June 27, 2024, Warren executed an executor's release conveying the remaining 1/2 interest in the Blue Mound property to herself.

¶ 8 On July 31, 2024, Aron filed a petition to remove Warren as executor and set aside the transfer of the Blue Mound property. On August 6, 2024, Aron filed a motion to amend his petition, which the circuit court granted on September 6, 2024. Aron filed on September 10, 2024, his amended petition to remove Warren as executor and set aside transfer of property. In his amended petition, Aron argued that Warren should be removed as independent executor under section 23-2(a) of the Probate Act of 1975 (Probate Act) (755 ILCS 5/23-2(a) (West 2022)) because she had engaged in self-dealing by purchasing the Blue Mound property without Aron's consent. The petition also claimed that Warren had allowed her son and the deceased's grandson, Austin Warren (Austin), to live on the Edinburg property rent-free. Specifically, Aron asserted that Warren had wasted or mismanaged the estate, had become unsuitable for the discharge of her duties as executor, and should be removed for other good cause. *Id.* § 23-2(a)(4), (a)(9), (a)(10). Aron also asked the circuit court to set aside Warren's purchase of the Blue Mound property.

¶ 9 On September 23, 2024, the circuit court issued a citation to appear and show cause why Warren should not be removed as executor. On October 11, 2024, Warren filed an answer to Aron's amended petition, admitting that she and her husband had purchased the Blue Mound property and that she had allowed Austin to live in the Edinburg property for free. Warren argued that she had paid fair market value for the 1/2 interest in the property, as appraisals had valued the property at $65,000 and $70,000. Warren characterized the release of the remaining 1/2 interest in

the property to herself as "part of her inheritance." Warren stated that the $32,500 she had paid for the first 1/2 interest was being held in the estate checking account awaiting distribution to Aron upon the estate's closure. Warren contended that, although the sale was voidable, the circuit court had the discretion to decline to void it. Warren recalled that Buttram had wanted her "to have said real estate and told her she should just buy her brother out once [Buttram] passed away." Warren also asserted that Buttram "did not trust Aron as [Buttram] felt he could not count on [Aron]."

¶ 10    Additionally, Warren alleged that Austin had lived at the Edinburg property for approximately four years prior to Buttram's death, and that Austin and Buttram had an agreement that Austin could live there for free as long as he maintained the property and paid for utilities, taxes, and insurance. Warren attested that Austin had abided by this agreement and continued to do so after Buttram's death. Warren stated that she allowed Austin's continued residency at the Edinburg property "to honor her father's wishes and continue with the same agreement [Buttram] had with Austin." Warren asked the circuit court to deny Aron's petition, allow her to remain as the estate's executor, and decline to set aside her purchase of the Blue Mound property. Warren attached two appraisals of the Blue Mound property as exhibits to her answer: the first, from February 2024, valued the property at $65,000; and the second, from June 2024, valued the property at $70,000.

¶ 11    In Aron's November 1, 2024, reply to Warren's answer, Aron cited the Illinois Supreme Court case *Schultz v. O'Hearn*, 319 Ill. 244 (1925), to argue that Illinois caselaw established an executor's purchase of estate property as (1) fraudulent *per se* and (2) voidable at the election of the other beneficiaries. Aron argued that, contrary to Warren's contention, if the other beneficiaries moved to void such a transaction, the circuit court did not have the power to decline to void it.

4

¶ 12    On November 19, 2024, the circuit court held a hearing on Aron's amended petition to remove executor and set aside transfer of property. After hearing argument, the circuit court took the matter under advisement. On March 24, 2025, the circuit court entered its ruling in a docket entry, granting Aron's motion to remove Warren as executor and to set aside for fraud Warren's purchase of the Blue Mound property. On this latter issue, the circuit court commented: "The court is aware that the result of this may at first appear to be unjust enrichment to [Warren]. However, this could have been avoided had the executor filed a petition for court order to conduct the sale. In this case, she did not." On April 23, 2025, Warren appealed the March 24 order to this court.

¶ 13    On October 1, 2025, Aron filed a motion for this court to impose sanctions upon Warren under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). Aron argues that Rule 375(b) allows this court to impose sanctions for appeals that are frivolous, not brought in good faith, or brought for improper purposes. Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994). Aron contends that Warren has herein filed such an appeal. In her October 8, 2025, response to Aron's motion for sanctions, Warren denies Aron's characterization of her appeal. On October 9, 2025, this court ordered that Aron's motion for sanctions would be taken with the case.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Warren argues that this court must reverse the circuit court's judgment where the circuit court erred in removing her as executor and setting aside for fraud the purchase that she and her husband made of the Blue Mound property. We review each issue in turn.

¶ 16          A. The Voiding of Warren's Purchase of the Blue Mound Property

¶ 17    In his will, Buttram appointed Warren as executor and granted her certain powers to conduct an independent administration of his estate without the need for court order. Warren argues that Buttram's explicit granting of these powers to her in his will proves that the trial court

5

erred in setting aside Warren's purchase of the Blue Mound property for fraud. Aron argues that the circuit court did not err in voiding the purchase, as Illinois caselaw establishes that an executor's purchase of estate property is fraudulent *per se*. Additionally, Aron claims that since he, as the only other beneficiary of Buttram's estate, moved to void Warren's purchase of the Blue Mound property, the circuit court did not have the power to decline to void it. We review the circuit court's decision to void the Blue Mound purchase *de novo*. *In re Estate of Agin*, 2016 IL App (1st) 152362, ¶ 17.

¶ 18    In the 1846 United States Supreme Court case, *Michoud v. Girod*, 45 U.S. 503, 509 (1846), the Supreme Court stated that "[a] person cannot legally purchase on his own account that which his duty or trust requires him to sell on account of another." Such a purchase "by a trustee or agent, of the particular property of which he has the sale, or in which he represents another, whether he has an interest in it or not, *carries fraud on the face of it*." (Emphasis added.) *Id.* The Court explained that "[t]his rule applies to a purchase by executors, at open sale, *although they were empowered by the will to sell the estate of their testator*," and that such purchases by executors would "be set aside." (Emphasis added.) *Id.* Since that time, Illinois courts have tended to agree. In *Schultz v. O'Hearn*, 319 Ill. 244, 247 (1925), our supreme court stated the following:

> "An administrator may not purchase, directly or through the intervention of another, property belonging to the estate of which he is administrator, at his own sale as such administrator, though made at public auction under a judicial decree for full value and with honest intentions. Such a transaction the law deems fraudulent, for the reason that the interests of the buyer and seller in a contract of sale are opposed; that the administrator acts in a fiduciary relation in making the sale; and that he ought not to be exposed to this conflict of interest in selling as trustee for the estate and buying for himself. The rule is inflexible."

Our supreme court also clarified that, although such purchases were not automatically void, they could be rendered so upon the election of the other beneficiaries within a reasonable time. *Id.* In *Eiseman v. Lerner*, 64 Ill. App. 3d 185, 189 (1978), the First District confirmed that "a purchase

6

by the administrator of the assets of an estate either directly or indirectly is fraudulent *per se* [citation] regardless of the adequacy of the price or the fairness of the sale." The *Eiseman* court explained that "[t]he reason for this rule is that the interests of a buyer and seller are necessarily antagonistic and the administrator acting as a fiduciary ought not to be exposed to this conflict of interest." *Id.* However, on rare occasions, such purchases have been left undisturbed by Illinois courts despite beneficiary request, such as in *Berber v. Hass*, 57 Ill. App. 2d 109, 111 (1965), where the First District affirmed the circuit court's dismissal of beneficiaries' action to set aside for fraud the former executor's purchase of estate property. In *Berber*, however, the decedent's will had explicitly granted the former executor a "nine month option to buy certain realty constituting the bulk of the decedent's estate" at the low price that he ultimately paid for it. *Id.* at 112. Additionally, the former executor sought and obtained an order from the circuit court permitting him to sell the property to himself at the price that he paid for it. *Id.*

¶ 19       In the case at bar, the will did not explicitly grant Warren permission to purchase the Blue Mound property herself, and she did not seek the circuit court's approval before doing so. The fact that Buttram's will granted the executor certain general powers to dispose of estate property without court order is insufficient to override the law's classification of such a purchase as fraudulent *per se*. Upon review, we conclude that the circuit court did not err in setting aside for fraud Warren's purchase of the Blue Mound property.

¶ 20                      B. The Removal of Warren as Executor

¶ 21       Section 23-2(a) of the Probate Act (755 ILCS 5/23-2(a) (West 2022)) lists the grounds upon which the circuit court may remove a representative[1] of the estate:

---

[1]Section 1-2.15 of the Probate Act defines the term "representative" as inclusive of the role of executor. See 755 ILCS 5/1-2.15 (West 2022).

"(a) On petition of any interested person or on the court's own motion, the court may remove a representative if:

(1) the representative is acting under letters secured by false pretenses;

(2) the representative is adjudged a person subject to involuntary admission under the Mental Health and Developmental Disabilities Code or is adjudged a person with a disability;

(3) the representative is convicted of a felony;

(4) the representative wastes or mismanages the estate;

(5) the representative conducts himself or herself in such a manner as to endanger any co-representative or the surety on the representative's bond;

(6) the representative fails to give sufficient bond or security, counter security or a new bond, after being ordered by the court to do so;

(7) the representative fails to file an inventory or accounting after being ordered by the court to do so;

(8) the representative conceals himself or herself so that process cannot be served upon the representative or notice cannot be given to the representative;

(9) the representative becomes incapable of or unsuitable for the discharge of the representative's duties; or

there is other good cause."

¶ 22   Here, Aron claimed that based upon three subparagraphs of section 23-2(a), Warren should be removed as executor. Specifically, Aron claimed that Warren had wasted or mismanaged the estate, had become unsuitable for the discharge of her duties as executor, and should be removed for other good cause. *Id.* § 23-2(a)(4), (a)(9), (a)(10). All three grounds were tied to two actions Warren had taken in her role as executor. First, Warren had purchased the Blue Mound property for herself and her husband without explicit consent from Aron, the only other beneficiary of Buttram's estate. Second, Warren had allowed Austin to live in the Edinburg property rent-free.

¶ 23   The circuit court ultimately decided, in its order of March 24, 2025, to grant Aron's petition to remove Warren as executor of Buttram's estate. On this matter, this court will only reverse the circuit court's decision if it is against the manifest weight of the evidence. *In re Estate of Savio*, 388 Ill. App. 3d 242, 249 (2009). A circuit court's decision is against the manifest weight of the evidence "only if it is unreasonable, arbitrary and not based on evidence, or when the opposite conclusion is clearly evident from the record." *Id.*

8

¶ 24　　The executor of a decedent's estate has a fiduciary relationship with the estate's beneficiaries. *Id*. For that reason, an executor is "held to the highest standard of fair dealing and diligence when dealing with the estate." *Id.* An executor's actions are scrutinized closely to ensure that she has adhered to those high standards and abided by her fiduciary duties to the estate's beneficiaries. *Id.* at 249-250.

¶ 25　　In *In re Estate of Hawley*, 183 Ill. App. 3d 107 (1989), this court affirmed the trial court's decision to remove a trustee where that trustee purchased the estate's real property and then leased it to his son. In that case, although the trustee had paid a fair price for the property, the lease terms were common and usual, and there were no allegations against the trustee of bad faith or wrongdoing, this court ruled that a trustee's duty was such that it would suffer neither "the remotest possibility of a conflict of interest, nor the faintest appearance of impropriety." *Id.* at 110. This court further commented that the trustee's action would only have been acceptable where the instrument expressly contemplated, created, and sanctioned such a conflict of interest. *Id.* at 109. Although *Hawley* concerned a trustee, the same principles apply to executors, since " '[t]rustees are but one example of a myriad of fiduciaries including guardians, executors, administrators,' " and agents, each of which owe " 'a duty of loyalty to the person or entity for whom the fiduciary is acting.' " *Hawkins v. Voss*, 2015 IL App (5th) 140001, ¶ 31 (quoting *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1008 (2010)).

¶ 26　　Warren's actions in letting Austin reside in the Edinburg property for free and purchasing the Blue Mound property for herself and her husband could very reasonably appear to be conflicts of interest. Under the Probate Act, conflicts of interest constitute sufficient "other good cause" for removal. See 755 ILCS 5/23-2(a)(10) (West 2022); also see *In re Phillips' Estate*, 3 Ill. App. 3d.

1085, 1090 (1972). We therefore find that the circuit court's decision removing Warren as executor of Buttram's estate was not against the manifest weight of the evidence.

¶ 27                    C. Aron's Motion for Sanctions Against Warren

¶ 28    Aron's motion of October 1, 2025, requests this court to impose sanctions upon Warren pursuant to Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994) for the reasons stated herein above.

¶ 29    Rule 375(b) reads, in relevant part, as follows:

> "(b) Appeal or Other Action Not Taken in Good Faith; Frivolous Appeals or Other Actions. If, after consideration of an appeal or other action pursued in a reviewing court, it is determined that the appeal or other action itself is frivolous, or that an appeal or other action was not taken in good faith, for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation, or the manner of prosecuting or defending the appeal or other action is for such purpose, an appropriate sanction may be imposed upon any party or the attorney or attorneys of the party or parties. An appeal or other action will be deemed frivolous where it is not reasonably well grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. An appeal or other action will be deemed to have been taken or prosecuted for an improper purpose where the primary purpose of the appeal or other action is to delay, harass, or cause needless expense.

> ***

> A reviewing court may impose a sanction upon a party or an attorney for a party upon the motion of another party or parties, or on the reviewing court's own initiative where the court deems it appropriate. If the reviewing court initiates the sanction, it shall require the party or attorney, or both, to show cause why such a sanction should not be imposed before imposing the sanction. Where a sanction is imposed, the reviewing court will set forth the reasons and basis for the sanction in its opinion or in a separate written order." Ill. S. Ct. R. 375(b) (eff. Feb. 1, 1994).

¶ 30    Upon review, we do not find that sanctions are warranted in this case. While we ultimately do not rule in Warren's favor, we do not see a sufficient basis to find that her argument upon appeal was frivolous, not made in good faith, or made for an improper purpose such as to delay, harass, or cause needless expense. Accordingly, we deny Aron's motion for sanctions against Warren.

10

¶ 31                                III. CONCLUSION

¶ 32    For the above reasons, we affirm the judgment of the circuit court in removing Warren as executor and setting aside Warren's purchase of estate property. We also deny Aron Buttram's request for sanctions.


¶ 33    Affirmed.